## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ANDREA L. NELSON,            )<br>                                              )<br>          *Plaintiff*              )<br>                                              )<br>v.                                           )<br>                                              )<br>JO ANNE B. BARNHART,      )<br>**Commissioner of Social Security,**  )<br>                                              )<br>          *Defendant*            ) | *Docket No. 04-193-P-H* |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that she was disabled prior to September 30, 1998 by affective disorder and anxiety-related disorder, was disabled only subsequent to that date. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD only through September 30, 1998, Finding 1, Record at 19; that the medical evidence established that prior to her date last insured ("DLI") she had an affective

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on May 19, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

disorder and an anxiety-related disorder, impairments that were severe but did not meet or equal any listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, *id.* at 20; that her statements concerning her impairments and their impact on her ability to work prior to her DLI were not entirely credible, Finding 4, *id.*; that as of her DLI she lacked the residual functional capacity ("RFC") to interact constantly with others, Finding 5, *id.*; that as of her DLI she was able to perform past relevant work as a dietary aide, Finding 6, *id.*; and that she therefore was not disabled as of her DLI and was not entitled to receive benefits for that period, Finding 7, *id.*  The administrative law judge did find, however, that the plaintiff had been under a disability since May 24, 2001.  Finding 13, *id.*  As a result, she was found eligible for SSI benefits, eligibility for which is not dependent on insured status.  *See id.* at 15-16.  The Appeals Council declined to review the administrative law judge's denial of SSD benefits, *id.* at 6-9, making that decision the final determination of the commissioner with respect to SSD, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past

work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service Rulings 1975-1982* ("SSR 82-62"), at 813.

The plaintiff complains that the administrative law judge erred in (i) determining that her anxiety and depression were not disabling on or before September 30, 1998, (ii) picking an arbitrary onset date (May 24, 2001), in contravention of Social Security Ruling 83-20 ("SSR 83-20"), and (iii) finding that her allegations concerning the period prior to her DLI were not entirely credible. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 6) at 2-6. I find no reversible error.

## I.  Discussion

### A.  Conditions Not Disabling

The plaintiff first contends that the administrative law judge erred in declining to find her condition disabling prior to her DLI. *See id.* at 2-3. The thrust of her first point of error appears to be that it should be apparent from the raw medical evidence itself that her mental impairments were disabling as of the relevant time frame. *See id.*[2] I disagree. As discussed below, I find that the administrative law judge's determination that the onset of disability postdated the plaintiff's DLI is supported by substantial evidence.[3]

---

[2] While the plaintiff's counsel at oral argument agreed with a characterization of her claim as an onset date issue as it relates to a finding made at Step 4, the plaintiff offered no reasoned argumentation tailored to that step in her Statement of Errors (for example, touching on findings regarding RFC or ability to perform past relevant work), *see* Statement of Errors at 2-3, nor did her counsel do so at oral argument. Any such argument therefore accordingly is deemed waived. *See, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

[3] The plaintiff did cite specific Record entries in support of her first point of error. *See* Statement of Errors at 2-3. However, as counsel for the commissioner pointed out at oral argument, her summary of the evidence is in some instances noticeably selective. For example, she points out that a treatment note indicates that on July 20, 1994 she was depressed, was having mood swings and was withdrawn. *See id.* at 2 (citing Record at 236). Yet she omits to mention that this same treatment note added that she was "able to continue working part time as before." Record at 236. In like vein, she asserts: "Perhaps the most important piece of evidence prior to her DLI is on 3/2/98 when Dr. Caparas writes she continues to experience panic attacks enough to limit her socialization and affect
*(continued on next page)*

3

### B.  Onset Determination (SSR 83-20)

The plaintiff next complains that, in contravention of SSR 83-20, the administrative law judge picked an arbitrary onset date (May 24, 2001, the date on which she filed her application for SSI and SSD benefits) rather than fixing an onset date based on the medical evidence of record.  *See id*. at 3-5.  This point is well-taken; however, the error was harmless.

SSR 83-20 provides, in relevant part:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.  In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49.  The ruling further provides, in pertinent part: "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis. . . .  Convincing rationale must be given for the date selected."  *Id*. at 51-52.

The administrative law judge did not follow this procedure.  Rather than determining that the plaintiff was disabled as of the date of decision and then proceeding to fix the date of onset, he erroneously assessed whether, for purposes of SSD, she was disabled as of her DLI.  *See, e.g*., Record at 15-16.[4]  This was a regrettable error; however, I am constrained to find that no useful purpose would be served by remanding this case for further proceedings inasmuch as it is clear that

---

her daily functioning." Statement of Errors at 3 (citing Record at 216) (boldface omitted). However, the full sentence from which this observation was excerpted reads: "Although her depression has somewhat lifted, which she attributes to the climate change as well, and that her panic attacks over the years have actually improved quite remarkably, she continues to experience them enough to limit her socialization and affect her daily functioning." Record at 216.

[4] As counsel for the commissioner pointed out at oral argument, for purposes of SSI, or Title XVI, the administrative law judge correctly measured whether the plaintiff was disabled as of the date of filing of her application. *See* SSR 83-20 at 56 (noting, with respect to Title XVI cases, "[o]nset will be established as of the date of filing provided the individual was disabled on that date.").

the Record supports the administrative law judge's finding that the onset of disability postdated the plaintiff's DLI.  This is so because, as the administrative law judge observed:

    1.      The plaintiff was afflicted by new, serious physical maladies – cervical disc disease with radiculopathy and right carpal tunnel syndrome – subsequent to her DLI, *see id*. at 18, Finding 3, *id*. at 20; *see also, e.g., id*. at 307-08, 316.

    2.      The Record reflects a significant worsening of the plaintiff's depression and anxiety subsequent to her DLI.  *See id*. at 18.  As the administrative law judge pointed out, *see id*. at 16, mental-health treatment records for the years 1993 through 1998 contain numerous references to the plaintiff benefiting from treatment and engaging in part-time work or other activities, *see, e.g., id*. at 223 (April 19, 1996 progress note in which plaintiff reported feeling quite well, having no major problems; was exercising and completing her GED), 219 (August 6, 1997 progress note in which plaintiff reported she was doing "fairly well" although she continued to have problems with insomnia, mood variations and anxiety related to crowds and open spaces that caused her to schedule activities around the time she would be in the company of others and to limit her grocery shopping to once a month; however, she had quit daytime job to attend cosmetology classes), 216 (March 2, 1998 progress note reflecting that plaintiff still having panic attacks and scheduling activities at times she would not encounter people and had missed classes during winter due to depression; however, depression improved, plaintiff still was attending cosmetology classes and mood was "good").

On May 18, 1998 – approximately four months prior to her DLI – the plaintiff reported to Maria Caparas, M.D., of the Maine Medical Center Outpatient Mental Health Clinic that she was not doing well at all, was feeling depressed with suicidal thoughts, had a disturbed sleep pattern and had been suspended from school due to frequent absences.  *See id*. at 215.  Nonetheless, she had been spending time roller-blading, taking walks and going to a tanning salon on a regular basis, albeit only

during hours she knew few people would be around. *See id*. She was to return to the clinic in six weeks' time. *See id*. The Record reflects that the plaintiff was a "no show" for a clinic appointment scheduled for July 30, 1998. *See id*. On February 1, 1999 Dr. Caparas noted that she had left a telephone message for the plaintiff requesting that she make a followup appointment and that the call was not returned. *See id*. at 214. As the administrative law judge pointed out, *see id*. at 17, there is no evidence that the plaintiff saw another mental-health practitioner until October 13, 1999, when she established care with Gina Oliveto, M.D., of Maine Medical Center, McGeachey Hall. *See id.* at 212-13. During the interim, the plaintiff continued on psychiatric medications prescribed by Carrine A. Burns, M.D., and other family-practice physicians. *See id*. at 212; 267-72. Dr. Burns noted on January 6, 1999 with respect to depression: "Sounds as though she is still in a good place with some plans to go back and see the psychiatrist at McGeachey." *Id*. at 269. At her October 13, 1999 visit with Dr. Oliveto, the plaintiff reported that her prescribed Zoloft had been somewhat helpful in that she had been able to get out of the house and take a part-time job, although she continued to struggle with feeling uncomfortable leaving the house during the daytime and to have occasional panic attacks. *See id*. at 212. Although the plaintiff described her mood as depressed, Dr. Oliveto noted that her affect did not reflect depression. *See id*. at 213.

By contrast, later progress notes reflect a significant subsequent worsening in the plaintiff's depression and anxiety. *See, e.g., id*. at 312 (report of Disability Determination Services ('DDS") examining consultant Martin Margulis, Ph.D., dated August 21, 2001 in which plaintiff was noted to have stated that her panic attacks had been increasing and she had days she could not get out of bed), 374 (progress note by treating psychiatrist Ovidiu Rivis, M.D., of Maine Medical Center, McGeachey Hall, dated July 17, 2002 describing plaintiff as "extremely distraught, tremulous, tearful"; assessing her as "barely functioning and unable to come out of the house, except on heavy doses of either

benzodiazepines or on some opiates."), 367 (progress note of January 23, 2003 in which Dr. Rivis assessed plaintiff with a GAF score of 40).[5]

Finally, it is worth noting that at the plaintiff's hearing on August 5, 2003, the administrative law judge advised her that he was going to find in her favor for purposes of SSI but that he did not feel that the Record, at least as it then stood, supported a finding of onset of disability prior to her DLI. *See id*. at 406-09.  Dr. Rivis, who had been the plaintiff's treating psychiatrist since March 1, 2002, had submitted two letters on her behalf, one dated January 29, 2003 and one dated April 14, 2003, in which he noted that the plaintiff had (i) a longstanding diagnosis of major depressive disorder, severe recurrent, with some episodes having almost psychotic intensity, then in partial remission; (ii) numerous symptoms of PTSD, or post-traumatic stress disorder, with no remembered traumatic event, (iii) severe agoraphobia that prohibited her from leaving the house without being accompanied or from working, and (iv) a GAF that at best was 45 and then was 40.  *See id*. at 368, 382.  The administrative law judge understandably did not view these letters as addressing the plaintiff's functional capacities prior to September 30, 1998.  At hearing, he invited the plaintiff's counsel to supply a letter from Dr. Rivis explicating her status as of then.  *See id*.  Inasmuch as appears, the only piece of evidence submitted post-hearing was a letter dated August 22, 2003 from Katherine D. Warburton, D.O., a resident psychiatrist at Maine Medical Center, stating that she had reviewed the plaintiff's records and was unable to formulate an opinion whether she was capable of sustaining gainful employment prior to September 1998.  *See id*. at 381.

---

[5] A GAF, or Global Assessment of Functioning, score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A score of 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."
*(continued on next page)*

In short, while the plaintiff is correct that the medical evidence does not support May 24, 2001 as the date that her combined impairments reached disabling proportions, the administrative law judge's determination that the onset postdated her DLI is supported by substantial evidence.

### C.  Credibility

The administrative law judge deemed the plaintiff's statements regarding her condition prior to her DLI only partially credible "in light of her own reports of improvement with treatment, gaps in the treatment record, and the range of activities which Ms. Nelson was able to perform." *Id*. at 18.  He added: "Her history of working without reporting her income also detracts from her credibility." *Id*.

The plaintiff faults this credibility finding on the bases that (i) it is unsupported, inasmuch as her physicians repeatedly noted prior to her DLI that she could perform activities outside of the house only when she knew there would be few people around, (ii) the finding that she had a history of working without reporting income was inconsistent with the finding that she had not engaged in substantial gainful activity at any time since her alleged onset date, and (iii) the administrative law judge failed to itemize and consider factors listed as relevant to credibility analysis by Social Security Ruling 96-7p ("SSR 96-7p").  *See* Statement of Errors at 5-6.

This plaint is without merit.  SSR 96-7p does not require an administrative law judge to list and analyze every relevant factor *seriatim*; rather, it states: "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004), at 134; *see also, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987)

---

*Id*. (boldface omitted).

("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

The administrative law judge supplied four specific reasons for assigning only partial credit to the plaintiff's statements about her condition prior to September 30, 1998. *See* Record at 18. As is made clear by my discussion above, each of the first three is supported by evidence of record. So is the fourth. *Compare, e.g., id.* at 88 (no reported earnings for 1999 or 2000) *with id.* at 206 (progress note of January 5, 2000 in which plaintiff stated she was working two to three days per week). No more was required.[6]

.
## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[6] I perceive no inconsistency between the administrative law judge's finding that the plaintiff had not engaged in substantial gainful activity and his finding that she had unreported income. In essence, he gave her the benefit of the doubt in finding a lack of substantial gainful activity because he had no way of knowing how much she actually had worked following her alleged onset date of December 31, 1991. *See* Record at 16 ("Although there are numerous references to Ms. Nelson earning unreported income after [December 31, 1991], the undersigned will find the claimant has not engaged in substantial gainful activity at any time since her alleged onset date. . . . In August 1997, Ms. Nelson stated that she quit her daytime job in order to attend cosmetology school. No earnings are posted to her record for 1997. The claimant's ability to participate in work and educational activities is inconsistent with a conclusion that she was disabled, and the evidence of unreported income leaves open the question of how much work she was actually doing in years after her alleged onset date.")

9

Dated this 24th day of May, 2005.

                                                                /s/ David M. Cohen
                                                                David M. Cohen
                                                                United States Magistrate Judge